UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XAVIER WHITE,

      Petitioner,

                    Case No. 16-cv-12720

v.

                    HON. TERRENCE G. BERG

JEFFREY WOODS,

      Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR
WRIT OF HABEAS CORPUS, DECLINING TO GRANT A
CERTIFICATE OF APPEALABILITY, AND GRANTING
LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Xavier White, who is presently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his state convictions for armed robbery, Mich. Comp. Laws § 750.529, possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Laws § 750.227b, and carrying a concealed weapon, Mich. Comp. Laws § 750.227. Petitioner asserts that (1) the pretrial identification procedure in his criminal case was unduly suggestive, (2) he was denied his right to counsel at the corporal line-up, (3) the prosecutor elicited, and failed to correct, false testimony, and (4)

trial counsel was ineffective for failing to investigate his claims and contact certain potential witnesses. For the reasons stated below, none of these claims warrant habeas relief. Accordingly, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.

## I. BACKGROUND

The Michigan Court of Appeals accurately summarized the facts leading to Petitioner's arrest and convictions as follows:

> Stephanie Bulger testified that, on February 10, 2013, she was robbed at gunpoint by two men, who took her purple purse and car keys. According to Bulger, White was one of the robbers. The police arrived less than five minutes after the robbery. Detroit Police Officer Treva Eaton testified that Bulger stated that one of the robbers wore plaid boxers and baggy pants.
>
> According to Officer Eaton, after receiving Bulger's description, [s]he drove around in h[er] patrol car to look for the suspects. Officer Eaton saw White in a parking lot. White wore a dark shirt and what appeared to be red plaid boxer shorts, and he was carrying a purple purse. White fled when he saw Officer Eaton's patrol car. White discarded the purse and a gun while officers chased him. Another officer eventually apprehended White.
>
> On February 11, 2013, Bulger went to the police station to view lineups. Detroit Police Sgt. Geraldine Young testified that another police sergeant initially used a two-by-two lineup procedure, where a total of six persons were brought out two at a time. Sgt. Young testified that Bulger did not identify anyone during the initial lineup. Attorney Gwendolyn Gordon thought that Bulger identified someone during the initial lineup, but she was not

2

certain whether it was White. According to Sgt. Young, she stopped the two-by-two line up procedure because she thought it was improper and she instead conducted a six-person lineup procedure. During the six-person lineup, Bulger asked that the suspects smile, say "give me your purse," and turn around. Bulger identified White after the six-person lineup procedure.

White moved to suppress Bulger's identification on the basis that the initial lineup procedure was unduly suggestive. The trial court found that the initial lineup procedure was not unduly suggestive and it denied the motion. It also found that it was not clear from Young's and Gordon's testimonies whether Bulger identified White during the initial lineup. At trial, Bulger testified that she identified White during both lineups.

*People v. White*, No. 318590, 2015 WL 160287, at *1 (Mich. Ct. App. Jan. 13, 2015).

The police were unable to capture the second suspect, and Petitioner's defense at his jury trial in Wayne County Circuit Court was that the case was one of mistaken identity. He denied committing the robbery, and he testified that he was at his aunt's apartment when the robbery occurred. He maintained that his friend Damien Moss was the robber and the person who eluded the police on the night of the robbery.

On August 29, 2013, the jury found Petitioner guilty, as charged, of armed robbery, felony firearm, and carrying a concealed weapon. The trial court sentenced Petitioner to six to fifteen years

in prison for the armed robbery conviction, two years in prison for the felony-firearm conviction, and time served (219 days in jail) for the concealed weapon conviction.

In an appeal of right, Petitioner argued through counsel that he was denied due process of law by an unorthodox and unduly suggestive identification procedure. He argued in a *pro se* supplemental brief that (1) he was denied his right to counsel during the pre-arraignment lineup, (2) he was denied due process of law by the prosecutor's presentation of false testimony and failure to correct false testimony, and (3) the trial court abused its discretion by denying his "motion to fingerprint evidence."

Petitioner filed a *pro se* motion to remand his case for an evidentiary hearing on a claim of ineffective assistance of counsel. He asserted that trial counsel was ineffective for failing to conduct a basic pre-trial investigation, introduce medical records, and interview exculpatory witnesses.

The Michigan Court of Appeals denied Petitioner's motion to remand, stating that Petitioner had "failed to properly demonstrate that [the] matter should be remanded at this time for further factual development of the record or an initial ruling by the trial court." *People v. White*, No. 318590 (Mich. Ct. App. Oct. 16, 2014).

The Court of Appeals subsequently affirmed Petitioner's convictions in an unpublished *per curiam* opinion. *People v. White*, No. 318590, 2015 WL 160287 (Mich. Ct. Jan. 13, 2015).

In a subsequent application for leave to appeal in the Michigan Supreme Court, Petitioner claimed that (1) the identification procedure was unduly suggestive, (2) he was denied the right to counsel during the pre-arraignment line-up, and (3) trial counsel was ineffective for failing to investigate claims. The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. White*, 864 N.W.2d 568 (Mich. 2015).

On July 19, 2016, Petitioner filed his habeas corpus petition. As noted above, he asserts that the pretrial identification procedure was suggestive, he was denied counsel at his lineup, the prosecutor committed misconduct, and his trial attorney was ineffective. Because Petitioner did not file a supporting brief, the Court has looked to his state-court briefs for a better understanding of his claims.

Respondent Jeffrey Woods argues in an answer to the petition that Petitioner's prosecutorial misconduct claim is procedurally defaulted and that the state appellate courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Section 2254(d) "thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, "[u]nder § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision . . . and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 71-72 (citing *Williams*, 529 U.S. at 405, 413); *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)(noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court"). Further, "'a determination of a factual issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence.'" *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015) (quoting 28 U.S.C. § 2254(e)(1)), *cert. denied*, 136 S. Ct. 1384 (2016). Finally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. ANALYSIS

### A. The Pre-Trial Identification Procedure

Petitioner's first claim challenges Stephanie Bulger's identification of him. Petitioner asserts that Ms. Bulger's identification was based on an unorthodox and unduly suggestive pretrial procedure.

For security reasons, the pretrial identification procedure began with three sets of two men being shown to Ms. Bulger at least one time and possibly as many as three times. Ms. Bulger may have identified someone other than Petitioner in one of the groups of two men, but she was not sure of her identification and wanted to continue with the procedure. Then, after the officer in charge of the case objected to the two-person lineups, the three sets of two men were placed in a six-person lineup. Ms. Bulger identified Petitioner in the six-person line-up after all six men smiled, said "Give me your purse," and turned around.

Petitioner claims that the pretrial procedure was unduly suggestive because showing the men to Ms. Bulger in pairs was equivalent to showing a single suspect to a witness for the purpose of identification. Petitioner also claims that Ms. Bulger's identification of him during the subsequent six-person lineup likely was based on her memory of seeing him in one of the groups of two people, as opposed to remembering him from the actual crime.

The trial court held an evidentiary hearing on this issue and concluded that the pretrial identification procedure was not unduly suggestive. 6/14/13 Mot. Hr'g at 51-52. The Michigan Court of Appeals subsequently adjudicated Petitioner's claim on the merits and agreed with the trial court that, although the two-person lineups were unusual, they were not unduly suggestive.

## 1. Clearly Established Federal Law

The Supreme Court has stated that "[t]he Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability . . . ." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). "Most eyewitness identifications involve some element of suggestion," *id.* at 244, but an identification procedure violates due process of law only if the confrontation was "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Simply stated, "[i]t is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers,* 409 U.S. 188, 198 (1972).

> If there is "a very substantial likelihood of irreparable misidentification," *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.

*Perry,* 565 U.S. at 232. "[E]ach case must be considered on its own facts," *Simmons*, 390 U.S. at 384, and when determining whether a pretrial procedure was unduly suggestive, the Court considers whether "the procedure itself steered the witness to one suspect or

another, independent of the witness's honest recollection." *Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009) (citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001)).

## 2. Application of the Law

In the present case, no notes or lineup sheets were made for the two-person lineups, and witnesses gave various accounts of what occurred. Attorney Gwendolyn Gordon was present to represent Petitioner.  She observed the lineup and testified during state-court proceedings that six men initially were shown to Ms. Bulger in groups of two. Each man was given a number between one and six, and the groups of two men may have been shown to Ms. Bulger more than one time. Later, the same six men were presented to Ms. Bulger in a six-person line-up. They were lined up in the same order that they appeared in the two-person lineups, and they were all young black men with short hair and about the same age and height. Attorney Gordon thought that Ms. Bulger may have picked someone other than Petitioner in the two-person lineups, but Bulger quickly changed her mind and wanted to continue with the procedure. During the subsequent six-person lineup, it was Ms. Bulger who wanted the men to smile, say "Give me your purse," and turn around. No one steered her attention to Petitioner or told her whom to pick. Ms. Bulger then identified Petitioner in the lineup. 6/7/13 Evidentiary Hr'g Tr. at 7-29; 8/28/13 Trial Tr. at 144-60.

Sergeant Geraldine Young conducted the lineup and corroborated some aspects of attorney Gordon's testimony. Sergeant Young explained that Ms. Bulger wanted the men to smile and say a few words because she remembered a gap in the robber's front teeth and because she thought that the spoken words would help her recognize the person. Sergeant Young denied telling Ms. Bulger whom to pick. She stated that, after the men said something similar to what the robber had said during the robbery, Ms. Bulger picked Petitioner out of the lineup without any hesitation. 6/14/13 Evidentiary Hr'g Tr. at 4-21; 8/26/13 Trial Tr. at 70-92. Ms. Bulger testified that her identification of Petitioner was based on her memory of the robber. She recognized him in the lineup as the person who robbed her, and she stated that she was not told whom to pick; nor was she steered to Petitioner. She also denied seeing any of the participants standing alone with his back to her and his underwear exposed. 6/14/13 Evidentiary Hr'g Tr. at 23-34; 8/26/13 Trial Tr. at 44, 67.

Petitioner testified at the evidentiary hearing that he was brought before Ms. Bulger by himself and told to expose his boxer shorts. 6/14/13 Evidentiary Hr'g Tr. at 39. The record, however, indicates that, if this occurred, it happened *after* Ms. Bulger identified Petitioner in the line-up. 6/14/13 Evidentiary Hr'g Tr. at 14, 16, 21; 8/26/13 Trial Tr. at 78-80; 8/28/13 Trial Tr. at 150.

The Court concludes from the testimony at the evidentiary hearing and at trial that the pretrial identification procedure was not unnecessarily suggestive. The men in the lineup apparently resembled Petitioner to a degree, and it does not appear that having Petitioner appear in one or more two-person lineups influenced Ms. Bulger's selection during the subsequent six-person lineup. She wrote on the lineup sheet for the six-person lineup that she picked Petitioner due to his mouth, the gap in his teeth, his dark complexion, his voice, and his facial features. 8/26/13 Trial Tr. at 41-42. She recognized Petitioner from the robbery and not because of any suggestiveness in the lineups.

Furthermore, the entire lineup process took at least forty-five minutes according to the lineup attorney, and, as the prosecutor pointed out, if the lineups had been unduly suggestive, Ms. Bulger would have picked Petitioner sooner.

Finally, although Petitioner maintained in state court that Ms. Bulger's identification of him was unreliable, the reliability of the identification was a matter for the jury to decide, because "the indicia of reliability [was] strong enough to outweigh [any] corrupting effect of the police-arranged suggestive circumstances." *Perry,* 565 U.S. at 231; *see also United States v. Hill,* 967 F.2d 226, 233 (6th Cir. 1992) (stating that "since the identification was sufficiently reliable, the district court properly left it to the jury to decide

what weight to ultimately give to the identification"). Petitioner is not entitled to relief on the basis of his challenge to the pretrial identification procedure.

## B. Counsel at the Lineup

Petitioner alleges next that he was denied his right to counsel at the lineup in the police station. The record does not support this claim because Petitioner was assigned counsel to represent him in connection with the lineup. Petitioner also alleges that the lineup attorney was ineffective because she did not object to the unorthodox and unduly suggestive lineup procedure. The Michigan Court of Appeals rejected Petitioner's claim on the basis that Petitioner had no right to counsel at his lineup and, therefore, he had no right to effective assistance of counsel.

The Supreme Court has said that the right to counsel attaches only to corporeal identifications conducted "at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972). This is so because the initiation of such proceedings "marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Id.,* at 690. Thus, in *Kirby*, the plurality held that the prosecution's evidence of a rob-

bery victim's one-on-one stationhouse identification of an uncounseled suspect shortly after the suspect's arrest was admissible because adversary judicial criminal proceedings had not yet been initiated. *Moore v. Illinois*, 434 U.S. 220, 226-27 (1977); *accord United States v. Reynolds*, 762 F.2d 489, 493 (6th Cir. 1985) (noting that, in *Kirby,* the Supreme Court held that the right to counsel did not attach to a preindictment lineup); *Sevier v. Turner*, 742 F.2d 262, 267 (6th Cir. 1984) (noting that the Supreme Court's cases in *Moore, Kirby*, and *Massiah v. United States,* 377 U.S. 201 (1964), "stand for the proposition that once adversary judicial criminal proceedings have commenced, the sixth amendment right to counsel attaches").

The crime in this case occurred on February 10, 2013. Petitioner was arrested that same night, and the lineup was held on the following day, February 11, 2013. According to the state court's docket, Petitioner was arraigned on February 13, 2013. *See* Wayne County Circuit Court Register of Actions for case number 13-001734-01-FC, Dkt. 9-1 at Page ID 102. Because he had not been formally charged or arraigned at the time of his lineup at the police station, adversarial judicial proceedings had not commenced, and he had no right to counsel at the lineup. Additionally, because Petitioner had no right to counsel at all, he could not have been denied effective assistance of counsel. *See Coleman v. Thompson*, 501 U.S.

722, 752 (1991) (concluding that a habeas petitioner cannot claim constitutionally ineffective assistance of counsel as "cause" for a procedural error during state post-conviction proceedings because there is no right to counsel in such proceedings); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (per curiam) (stating that because the habeas petitioner had no constitutional right to counsel during his discretionary appeal to the state supreme court, he could not be deprived of effective assistance of counsel by counsel's failure to file a timely appeal in the state supreme court). Moreover, Petitioner had counsel assigned to for purposes of the line-up, and the two-person line-up procedure was not shown to be unduly suggestive so as to be objectionable. Consequently his counsel was not ineffective for failing to object to the procedure.

The state appellate court's rejection of Petitioner's claim was not contrary to Supreme Court precedent or an unreasonable application of Supreme Court precedent. Therefore, Petitioner is not entitled to habeas relief on the basis of his second claim.

## C. The Prosecutor's Conduct[1]

The third habeas claim alleges that the prosecutor deprived Petitioner of a fair trial by eliciting false testimony from Ms. Bulger and by failing to correct the false testimony. The basis for this claim is the differences between Ms. Bulger's statement to the police following the robbery and her subsequent testimony at the evidentiary hearing and trial.

The Michigan Court of Appeals rejected Petitioner's claim on the basis that Ms. "Bulger's new or different recollection of the details of the robbery may have provided grounds for impeachment, but that [did] not alone render her testimony false." *White*, 2015 WL 160287, at *3. The Court of Appeals concluded that Petitioner had failed to show "that the prosecutor's admission and use of Bulger's testimony constituted prosecutorial misconduct." *Id.*

_____

[1] Respondent argues that Petitioner's prosecutorial-misconduct claim is procedurally defaulted because the Michigan Court of Appeals stated on review of the claim that it does not reverse a conviction based on prosecutorial misconduct "unless the defendant specifically challenges the alleged misconduct before the trial court or a failure to review the issue would result in the miscarriage of justice." *White*, 2015 WL 160287, at *3. The Court of Appeals then stated that it "review[s] unpreserved claims of prosecutorial misconduct for plain error affecting the defendant's substantial rights." *Id.* Even assuming that these comments amounted to a clear and express statement that the state court's judgment rested on a state procedural bar, *Harris v. Reed*, 489 U.S. 255, 263 (1989), a procedural default "is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). In the interest of efficiency, the Court excuses the alleged procedural default and proceeds directly to the merits of Petitioner's claim.

### 1. Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus case, *Millender v. Adams*, 376 F.3d 520, 528 (2004). Supreme Court cases "demonstrate that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The relevant question is whether the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). Because that standard is "a very general one," courts have considerable leeway in resolving such claims on a case-by-case basis. *Parker v. Matthews*, 567 U.S. 37, 48, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam). That leeway increases in assessing a state court's ruling under AEDPA. *Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1998 (2018).

Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate,* 386 U.S. 1 (1967)). "[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103,

112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But "[a] conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.'" *Fields*, 763 F.3d at 462 (quoting *Giglio,* 405 U.S. at 154). Furthermore, "[t]o prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009).

## 2. Application of the Law

Petitioner points out that Ms. Bulger:

● testified that she did not pick someone other than Petitioner in the lineup, 8/26/13 Trial Tr. at 58 even though another witness (lineup attorney Gwendolyn Gordon) testified that Ms. Bulger may have picked someone else, 8/28/13 Trial Tr. at 147;

● provided a general description of the robber to the police, 8/28/13 Trial Tr. at 50, 74-75, 78, and did not mention the gap in his teeth until the evidentiary hearing, 6/14/13 Evidentiary Hr'g Tr. at 8-9;

- informed the police that the gun used in the robbery was silver, 8/28/13 Trial Tr. at 78, 94, but changed her story at trial and said that the gun was actually black in color 8/26/13 Trial Tr. at 65;

- told the police that the robber's boxer shorts were checkered, 8/28/13 Trial Tr. at 33, 75, 85, but at trial said that his underwear was striped, 8/26/13 Trial Tr. at 33, 46, which was consistent with a photograph taken of Petitioner at the line-up; *see* Dkt. 9-14 at Pg ID 952; and

- did not mention the distinctive Red Wings jacket that Petitioner was wearing on the night of the robbery, 8/28/13 Trial Tr. at 96 and 117, when she provided the police with a description of the robber, *id*. at 68.

The failure to tell the police about the gap in the robber's teeth or the jacket he was wearing were mere omissions in details about the criminal incident, and the other facts mentioned above are mere inconsistencies in testimony, which do not establish the knowing use of false testimony. *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir. 1989). Furthermore, discrepancies in the testimony were pointed out at trial, and they could have been the result of a faulty initial observation, an innocent mistake, confusion, or a lapse in memory. The initial description of the gun as silver may have been because it was blue steel, which, according to one officer, could look like silver in the dark if the light reflected on it. 8/28/13 Trial

Tr. at 95. The initial description of Petitioner's boxer shorts as checkered could have been because Petitioner was wearing a long checkered shirt under his jacket at the time, and the shirt could have been mistaken for boxer shorts due to Petitioner's sagging pants. *Id*. at 89, 102.

To conclude, Petitioner has failed to show that Ms. Bulger lied at trial and that the prosecutor suborned perjury. Additionally, the alleged discrepancies in testimony did not deprive Petitioner of a fair trial because they were brought to the jury's attention, and the jury could judge the credibility of Ms. Bulger based on the inconsistencies. The state appellate court's conclusion—that the prosecutor's admission and use of Ms. Bulger's testimony did not constitute prosecutorial misconduct—was objectively reasonable. Therefore, Petitioner has no right to relief on the basis of his prosecutorial misconduct claim.

### D. Trial Counsel

In his fourth and final claim, Petitioner alleges that his trial attorney was ineffective for failing to investigate certain witnesses. Specifically, Petitioner contends that trial counsel failed to speak

with Dr. Soloman[2] regarding the condition of Petitioner's knee and failed to admit Petitioner's medical records in evidence.

In his state court motion to remand, Petitioner also alleged that his trial attorney was ineffective for failing to investigate Petitioner's girlfriend, Brea Harries, and another person named Christopher Witherspoon. Ms. Harries allegedly would have testified that Petitioner was talking on the phone with her at the time of the robbery, and Mr. Witherspoon would have testified that Damien Moss came to his house after the robbery. Petitioner claims that trial counsel never contacted Ms. Harries or Mr. Witherspoon. *See* Defendant-Appellant's Mot. for Remand, Mich. Ct. App. No. 318590, Dkt. 9-14 at Pg ID 85-87.

The Michigan Court of Appeals denied Petitioner's motion to remand for failure to demonstrate that the matter should be remanded at the time for further factual development of the record or for an initial ruling by the trial court. That order constituted a decision on the merits of Petitioner's claim. *See Hendrix v. Palmer*, __

---

[2] The record indicates that the physician's actual surname is Suleiman. *See* Petitioner's Witness and Exhibit List in Wayne County Circuit Court, Dkt. 9-14, Page ID 79, and Dr. Suleiman's affidavit, Dkt. 9-14, Page ID 1003-04.

F.3d __, __, Nos. 16-2279/2310, 2018 WL 3121235, at *6-7 (6th Cir. June 26, 2018). Therefore, AEDPA's elevated standard of review applies to Petitioner's claim. *Id.*, at *7.

### 1. Clearly Established Federal Law

To prevail on his ineffective assistance of counsel claim, Petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional er-

rors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). An attorney's "failure to conduct a reasonable investigation into . . . 'a known and potentially important witness' violate[s] [a defendant's] Sixth Amendment right to the effective assistance of counsel." *Id.* at 259 (quoting *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987)); *see also*

*Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010) ("The failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense.").

Under *Strickland*, however, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)). "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

> The Supreme Court has held that counsel is not ineffective for failing to investigate if "further investigation would have been fruitless," *Wiggins v. Smith*, 539 U.S. 510, 525, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003), because the additional evidence "would be of little help," *Strickland*, 466 U.S. at 699, 104 S.Ct. 2052, "can reasonably be expected to be only cumulative," *Bobby v. Van Hook*, 558 U.S. 4, 11, 130 S.Ct. 13, 175 L.Ed.2d 255 (2009), or carries "serious risks" of "expos[ing defendant's story] as an invention," *Harrington*, 562 U.S. at 108, 131 S.Ct. 770.

*Fitchett v. Perry*, 644 F. App'x 485, 491 (6th Cir. 2016).

## 2. Application of the Law

Petitioner apparently believes that if his attorney had interviewed Dr. Suleiman he could have proven that Petitioner was not the robber because he could not run, as the robber did, due to injuries to his knee and subsequent surgeries. The record indicates that defense counsel did consider having Dr. Suleiman testify that Petitioner had difficulty running due to knee injuries and surgeries. *See* Petitioner's Witness and Exhibit List in Wayne County Circuit Court, Dkt. 9-14 at Pg ID 79. At trial, however, Petitioner testified that he could not afford to pay the physician's fee for testifying. 8/28/13 Trial Tr. at 211. Under the circumstances, trial counsel's alleged failure to produce Dr. Suleiman as a defense witness did not constitute deficient performance.

Even if counsel's performance was deficient, it did not prejudice the defense, because Petitioner himself testified that he injured his knee injury in a car accident and while playing football. He claimed that he had two surgeries on his knee, that he had medical records to prove his allegations, and that he was unable to jump,

run, or engage in extreme activities as a result of his injuries. *Id.* at 210-11.

The decision not to investigate Ms. Harries apparently was a strategic one, because Petitioner says that his trial attorney told him that no one would believe Ms. Harries. As for Christopher Witherspoon, Petitioner states that Witherspoon would have said that Damien Moss came to his house after the robbery. This testimony would not have exonerated Petitioner.

Furthermore, Petitioner has failed to show that either Ms. Harries or Mr. Witherspoon were willing and able to testify in his defense. Because Petitioner has not offered any affidavits from Ms. Harries or Mr. Witherspoon, nor provided any other evidence beyond his own assertions to prove that Harries and Witherspoon would have provided favorable testimony if they had testified, he cannot show that he was prejudiced by the omission of their testimony. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

Finally, given the strength of the evidence against Petitioner, including testimony that he discarded the victim's purse, fled from

the police, and was found in possession of the victim's bracelet, it is unlikely that the result of the trial would not have been different had Dr. Suleiman, Brea Harries, and Christopher Witherspoon testified.

Defense counsel's choice of witnesses and failure to pursue Petitioner's speculative claim that additional witnesses would have supported his defense did not fall below an objective standard of reasonableness, and the allegedly deficient performance did not prejudice the defense. Therefore, the state court's rejection of Petitioner's ineffective-assistance-of-counsel claim was not contrary to, or an unreasonable application of, *Strickland*.

## IV. CERTIFICATE OF APPEALABILITY

When a federal district court issues an adverse ruling on a habeas petition, the court "must issue or deny a certificate of appealability." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree

with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484.

Petitioner's claims lack merit for the reasons given above, and reasonable jurists would not find the Court's assessment of the claims debatable or wrong. Accordingly, Petitioner is denied a certificate of appealability. The Court nevertheless grants leave to appeal *in forma pauperis* because Petitioner was granted *in forma pauperis* status in this Court (Dkt. 4), and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

## V. CONCLUSION

Based on the foregoing, and because the state appellate court's rejection of Petitioner's claims was objectively reasonable, it

is **ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**, and this case is hereby closed. It is **FURTHER OR-DERED** that a certificate of appealability is **DENIED**. It is **FUR THER ORDERED** that *in forma pauperis* status on appeal is **GRANTED**.

   **SO ORDERED.**

Dated: September 20, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

**Certificate of Service**

   I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 20, 2018.

s/A. Chubb
Case Manager